UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN L., <br>     Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> COMMISSIONER, SOCIAL SECURITY <br> ADMINSTRATION, <br>     Defendant. | C.A. No. 23-154-PAS |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Until he was seriously injured in a motor vehicle accident on December 24, 2018, Plaintiff John L., a "younger individual," worked as a truck driver for many years; since the accident, he has not worked apart from one brief failed attempt in 2021.[1]  Tr. 21, 331.  On March 10, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") under the Social Security Act.  Tr. 17.  He alleged disability based on left rotator cuff tear, back pain, bone spurs in both feet, arthritis in both hands, anxiety, depression and attention deficit hyperactivity disorder ("ADHD").[2]  An administrative law judge ("ALJ") agreed that Plaintiff became disabled due to the serious injury to his left shoulder caused by the motor vehicle accident, which he found to be of sufficient duration and severity as to meet a Listing.  Tr. 23.  Plaintiff was awarded benefits.

---

[1] In March 2021, Tr. 253, Plaintiff worked for one day as a truck driver and resigned because he found he could not turn his neck to the left to see the mirrors, did not feel safe and had anxiety ("freaked out") on highways and bridges. Tr. 76.

[2] The medical record reflects other impairments (including asthma, opioid addiction in remission with ongoing medical treatment, low testosterone and tachycardia).  Plaintiff's arguments do not focus on these conditions. Therefore, they will not be discussed further.

However, on July 15, 2020, a year following surgery that was performed six months after the accident, Plaintiff's treating orthopedist, Dr. Andrew Green, opined that Plaintiff could return to work without restrictions. Tr. 29, 866. In partial reliance on Dr. Green, as well as the other evidence of record, the ALJ found that, beginning on July 16, 2020, Plaintiff's left shoulder had medically improved so that it no longer met the criteria for a Listing although Plaintiff remained limited in that he could work only up to the light exertional level with additional limits due to the injury to his left shoulder (and its impact on his left arm and hand), as well as due to social anxiety. Tr. 29. A vocational expert noted that the limitation on left side reaching and handling "eliminates a lot" and that, combined with the social limitation, it "severely erode[s]" the work available at the sedentary and the light exertional levels; however, she testified to work that she opined Plaintiff could still perform. Tr. 95-97. The ALJ found that Plaintiff was no longer disabled beginning on July 16, 2020. Tr. 35-36.

Now before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security (the "Commissioner") that he has not been disabled since July 15, 2020. ECF No. 14. Plaintiff contends that the ALJ erred in formulating an RFC[3] based on the opinions on non-examining expert physicians and psychologists who were not aware of the material worsening of some of Plaintiff's existing impairments (lumbar spine and right shoulder pain[4]), and the diagnosis of new impairments (knee and hand pain, including carpal tunnel syndrome), including the need for multiple injections to treat pain, as well as in failing appropriately to consider all of Plaintiff's limitations, particularly those caused by his

---

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[4] For the reader's benefit, the Court notes that this is the opposite shoulder from the one damaged in the December 24, 2018, motor vehicle accident.

2

longstanding mental health diagnoses of ADHD, depression and anxiety.[5]  ECF No. 14 at 18-22.  The Commissioner's countermotion asserts that the ALJ's decision is consistent with applicable law and sufficiently supported by the evidence.  ECF No. 17.  The matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.  **Background**

The medical evidence begins in mid-2018, when Plaintiff was forty-three and, for many years, had been working full time as a delivery truck driver at the heavy exertional level.  These early records reflect that his primary care team for this period, led by Dr. Gilbert Teixeira, was treating him for various impairments, including right shoulder pain, back pain that had previously been diagnosed as lumbar stenosis and mental health conditions (ADHD, anxiety and depression) that were treated with medication.  Tr. 614-18; see, e.g., Tr. 617 (diagnosis "acute pain of right shoulder," with recommendation of lifting no more than ten pounds).  Noted medical history included "chronic back pain," anxiety and "panic."  Tr. 424.

At the end of 2018, Plaintiff was in a serious roll-over motor vehicle accident that injured his left shoulder, an injury that was slow to heal and required surgery that was performed six months after the accident, preceded and followed by physical therapy.  Tr. 416-613, 863-84.  Following a lengthy period of recovery, on July 15, 2020, the treating orthopedist, Dr. Green, opined that it was "safe for [Plaintiff] to return to work without restrictions" and discharged him from ongoing care.  Tr. 866.  During the period of recovery from the motor vehicle accident (from December 24, 2018, until July 15, 2020), the record contains few references to treatment of the impairments that were being treated prior to the accident, including lumbar spine and right

---

[5] The Commissioner argues that Plaintiff did not sufficiently develop his challenge to the ALJ's alleged failure to acknowledge the mental health limitations caused by ADHD, anxiety and depression.  ECF No. 17 at 2 n.1.  I do not agree.  Plaintiff's brief is clear that the ALJ's mental health determination is in issue and points to specific evidence that he contends the ALJ failed properly to consider.

shoulder pain, ADHD, depression and anxiety, although medication to treat the mental health impairments continued to be prescribed by Dr. Teixeira. E.g., Tr. 624, 626, 629. After that period to the end of 2020, Plaintiff continued to treat with Dr. Teixeira, with appointments in July, September and December 2020; these were telephonic visits in the early phase of the Covid pandemic during which prescriptions were renewed, including for ADHD, anxiety and depression. Tr. 744-816. These records reflect ongoing left shoulder pain but do not reflect complaints of knee, foot or right shoulder pain. And from the end of 2020 through May 2021, the record reflects no medical treatment at all. See Tr. 816-17.

During this apparent gap in intensive treatment,[6] Plaintiff continued to prosecute his DIB application, which had been filed on March 10, 2020. Based on Plaintiff's physical allegations, in August 2020 (soon after Dr. Green cleared him to return to work), the Social Security Administration ("SSA") procured x-rays of Plaintiff's hands, feet and lumbar spine; all were interpreted as normal. Tr. 661, 668. In September 2020, Plaintiff was examined by an SSA consulting physician Dr. Paul Dionisopoulis, who considered Plaintiff's claims of low back pain, foot pain from bone spurs, arthritis in both hands, ADHD, anxiety and depression. Tr. 666. His examination confirmed pain/tenderness and decreased range of motion in the left shoulder and lumbar spine and pain in the feet and hands, with normal gait except for heel-to-toe difficulties. Tr. 668-69.

This record was reviewed by an SSA expert, Dr. Donn Quinn, who opined on September 11, 2020, that, throughout the period under review (that is, both before and after July 15, 2020), Plaintiff could lift, sit, stand and walk at the light exertional level with no postural or manipulative limits, except for only occasional crawling and rope/ladder climbing and limited

---

[6] Plaintiff's failed work attempt was during this "gap," in March 2021. See n.1 supra.

4

reaching and handling with the left arm. Tr. 105-06. Dr. Quinn's opinion highlights the normal x-rays taken in August 2020 and Plaintiff's normal gait. Tr. 106. At reconsideration, signed on February 2, 2021, Dr. Mitchell Pressman concurred in Dr. Quinn's opinion. Tr. 112.

Plaintiff's mental impairments were also considered in connection with his DIB application, beginning with a consulting examination performed by an SSA expert psychologist, Dr. Alexander Turchetta, on October 17, 2020. Tr. 671. Dr. Turchetta observed anxiety, rocking and leg-bouncing, sub-normal coordination and fine motor skills, and difficulty walking, Tr. 673; he found that Plaintiff experiences significant physical and "moderate emotional discomfort," id., with moderate anxiety and depression, which he opined would adversely impact Plaintiff's ability to follow complex instructions, sustain attention, concentrate and focus and perform tasks, including moderate limitations in the ability to respond to normal work pressures, as well as to respond socially to supervisors and co-workers. Tr. 674. Dr. Turchetta concluded that Plaintiff's prognosis was poor. Id. At the initial phase, this record was reviewed by SSA expert psychologist, Dr. Jeffrey Hughes, who disagreed with Dr. Turchetta's finding that Plaintiff could not perform complex tasks and sustain workplace concentration and persistence; Dr. Hughes found only social limits. Tr. 106. At the reconsideration phase, SSA expert psychologist Dr. Albert Hamel signed an opinion on February 2, 2021, that relied on the lack of specialized psychological treatment and concurred with Dr. Hughes. Tr. 113.

Beginning four months after the final SSA review was concluded, in June 2021, Plaintiff resumed treatment for an array of physical concerns, including both the low back and right shoulder pain that had been treated before the motor vehicle accident, as well as conditions that appear for the first time in this record (bone spurs and other conditions of the feet, hand pain and knee pain). First, on June 7, 2021, Plaintiff initiated treatment with orthopedist Dr. William

Brennan for worsening mid and low back pain; with observations of antalgic gait, positive straight leg raise and an MRI reflecting disc issues with radiculopathy; Dr. Brennan sent Plaintiff to physical therapy and administered epidural injections. E.g., Tr. 886-87, 821-22, 906, 918. The physical therapy notes reflect the opinion that Plaintiff's lumbar spine "has significantly decreased his ability to work and function." Tr. 890. Second, also in June 2021, Plaintiff had two appointments at Foot & Ankle Institute, for acute pain from a stress fracture, as well as for "chronic bilateral foot pain." Tr. 817-18. This resulted in diagnoses of a bone spur, bilateral ankle tenosynovitis and plantar fasciitis with injections as a possible treatment. Tr. 818. Third, in August 2021, Plaintiff complained to Dr. Brennan of right knee pain. Tr. 901. Based on an MRI, Dr. Brennan diagnosed osteoarthritis and began treating with injections, which continued into 2022. E.g., Tr. 907-11, 916, 974-75, 982-83. In 2022, Dr. Brennan's group began treating Plaintiff's pain in both shoulders, with a small tear diagnosed in the left by MRI and findings regarding the right by x-ray and MRI; an injection was administered and physical therapy for the right shoulder was prescribed as treatment. Tr. 976-81, 984-85, 1007-08, 1039. Finally, in April 2022, Plaintiff was seen by Dr. Scott Allen for hand pain; bilateral carpal tunnel syndrome was diagnosed and a wrist injections were administered. Tr. 1035-37. None of these records were seen by the SSA physicians.

      Months after the SSA file review was concluded, in August 2021, Plaintiff initiated specialized mental health treatment (for the first time in this record) at Fellowship Health Resources ("FHR"). Tr. 926. On various mental status examinations, he was clinically observed *inter alia* to be fidgety, hyper/hyperactive, having pressured speech, restless and unable to sit still. Tr. 929-30, 949-50, 954, 958. Consistent with the treating records, Plaintiff was diagnosed with ADHD and depression; he was treated with medication and counseling under the

supervision of FHR clinical director Heather Hilton, LMHC, MA, CAGS, QMHP, CCSP, SEP. Tr. 926, 949.  None of these records were seen by the SSA psychologists.

Finally, during the post-file-review period, several of Plaintiff's treating providers prepared and signed opinions regarding his ability to work.  First, in December 2021, a provider (the signature is not legible) at Dr. Brennan's practice vaguely opined that Plaintiff "[c]annot work for any period of time without pain."  Tr. 825.  Also in December 2021, Dr. Teixeira opined with far more specificity that Plaintiff's "multiple health issues and mental impairments . . . make[] it impossible to contribute in the workforce [and] [t]hese conditions restrict him from sitting, standing and walk[ing] for any extended amount of time . . . [and] also extends to his ability to lift, squat; climb and kneel."  Tr. 826.  Four days before the ALJ's hearing, Dr. Teixeira signed a second opinion; this time, he used an RFC form and opined that Plaintiff can sit/stand for no more than one hour, can never walk, cannot lift more than ten pounds and cannot use either arm for repetitive actions, as well as that he has significant postural limits.  Tr. 17, 1001.  Third, also in April 2022, the supervisor of Plaintiff's mental health treating team at FHR, Ms. Hilton, signed an opinion concluding that Plaintiff has moderately severe limits not just in the ability to relate to others, but also in his ability to understand instructions and to perform repetitive or varied tasks, as well as that his mental health symptoms will cause him to experience frequent interruptions (three to four per day) and work absences (more than three per month).  Tr. 1003-05.

## II.     Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

### III.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-511.

#### A.     The Five-Step Evaluation and Medical Improvement Standard

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 404.1520(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 404.1520(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

If the claimant is found disabled, the ALJ must also determine if the disability continues through the date of the decision or whether there has been medical improvement, defined as "any decrease in the medical severity of [claimant's] impairment(s) present at the time of the most recent favorable medical decision." 20 C.F.R. § 404.1594(b)(1). When medical improvement is found, the Commissioner must then determine whether the improvement has positively affected the claimant's ability to do work based on an eight-step evaluation process laid out in the regulations. Corrigan v. Barnhart, 352 F. Supp. 2d 32, 43 & n.2 (D. Mass. 2004) (citing 20 C.F.R. § 404.1594(f)); see generally Elie v. Saul, 474 F. Supp. 3d 367, 369-70 (D. Mass. 2020).

First, if the claimant is engaged in substantial gainful activity, disability ends. 20 C.F.R. § 404.1594(f)(1). Second, if the claimant has an impairment or combination of impairments that meets or equals the severity of a Listing, disability continues. Id. § 404.1594(f)(2). Third, the ALJ must determine whether there has been medical improvement; if yes, the ALJ proceeds to step four; otherwise, to step five. Id. § 404.1594(f)(3). Fourth, the ALJ must determine whether the medical improvement relates to the claimant's ability to work; if yes, the ALJ proceeds to step six; otherwise, to step five. Id. § 404.1594(f)(4). Fifth, the ALJ must determine if an exception applies that could mandate continuance or termination of benefits. Id. § 404.1594(f)(5). Sixth, the ALJ must determine whether the claimant's impairments (in combination) are severe, meaning do they "significantly limit [claimant's] physical or mental abilities to do basic work activities"; if they are not, disability ends. Id. § 404.1594(f)(6). If they are, the ALJ will determine the claimant's RFC. Id. § 404.1594(f)(6). Seventh, the ALJ must determine, considering the claimant's RFC, whether he can return to past relevant work; disability stops for someone who can. Id. § 404.1594(f)(7). Eighth, the ALJ must determine

whether, considering the RFC, the claimant can do other work; if he can, disability ends. Id. § 404.1594(f)(8).

## IV. Analysis

To conclude that Plaintiff was disabled due to Listing-severity injuries sustained in the motor vehicle accident for the period that is not now in issue – from December 24, 2018, until July 15, 2020 – the ALJ rejected as unpersuasive the prior administrative findings of the SSA non-examining physicians (Drs. Quinn and Pressman), who had found Plaintiff capable of light work at all relevant times. Tr. 25. Otherwise, he found that all of Plaintiff's other impairments for the period from December 24, 2018, until July 15, 2020, were non-severe. To reach this conclusion for mental health, the ALJ considered the findings of SSA non-examining psychologists (Drs. Hughes and Hamel) as persuasive but (somewhat illogically)[7] rejected Ms. Hilton's opinion as unpersuasive and Dr. Turchetta's report as only partially persuasive. Tr. 24-25. To find Plaintiff's low back pain, foot pain (including bone spurs), right knee pain, right shoulder pain and hand pain (including carpal tunnel syndrome) to be non-severe during this period, the ALJ rejected the remaining opinion evidence, including both of Dr. Teixeira's opinions and the opinion from Dr. Brennan's practice,[8] and declined to articulate the persuasiveness (or not) of Dr. Dionisopoulis' consulting examination report. Tr. 26.

For the period now in issue beginning on July 16, 2020, the ALJ found that Plaintiff's left shoulder was no longer impaired at a Listing level of severity, but that it was still a severe impairment that impacted Plaintiff's ability to push/pull, frequently lift more than twenty pounds,

---

[7] This finding is illogical because Plaintiff did not see any of Ms. Hilton's treating team until after this period ended. That is, the end of the closed period of disability (as found by the ALJ) is July 15, 2020, and Plaintiff's first FHR appointment with the treatment team supervised by Ms. Hilton was in August 2021.

[8] This determination suffers from the same defect flagged in note 7, *supra*: treatment with providers at Dr. Brennan's practice did not begin until June 2021; therefore, it is illogical to find it unpersuasive as applicable to a period to which it could not pertain.

operate hand controls, and handle and reach with the left arm/hand. Tr. 29. The ALJ also found that Plaintiff suffers from severe mental health impairments, but that social anxiety is the only one that limits his ability to work (because it impacts his ability to interact with coworkers, supervisors and the public). Tr. 29. Plaintiff does not dispute either this left-shoulder finding or this social anxiety finding. Otherwise, however, the ALJ found that, after July 15, 2020, Plaintiff did not develop any new impairments and that all physical impairments other than the left shoulder continued to be non-severe and all mental limits on understanding, concentrating and adapting continued to be mild. Tr. 26-29. Plaintiff contends that these findings are tainted by error because the ALJ relied exclusively on the non-examining experts who were not privy to a material portion of the medical file.

For physical impairments in the post-July 15, 2020, period, the ALJ implausibly found that the same non-examining physician opinions that he had previously determined were "unpersuasive" had morphed to become "mostly persuasive." Tr. 33. Despite their erroneous findings for the period prior to July 15, 2020, and the reality that, for the post-July 15, 2020, period, they were completely unaware of the resumption of intensive treatment (including many injections) after the treating gap, the ALJ relied on them to formulate the physical RFC. Further, although the ALJ acknowledged the substantive development of the record of Plaintiff's physical impairments after the final SSA non-examining file review in February 2021, without guidance from any medical expert, he found that this evidence "is not supportive of greater functional limitations than assessed herein because as discussed, the claimant continued to present as alert, fully oriented, and in no acute distress . . . [with] no evidence of neurological or motor deficits despite intermittent references to a mildly antalgic gait." Id. In light of his reliance on the non-examining physicians, the ALJ rejected as unpersuasive the opinions of the medical professional

who had actual contact with Plaintiff – his longtime primary care physician, Dr. Teixeira. Tr. 34.[9]

The ALJ's approach to Plaintiff's mental impairments for the post-July 15, 2020, period is similar. That is, he relied exclusively on the non-examining psychologists and rejected any but social limitations. To reach this conclusion, he found that Plaintiff's post-file-review specialized mental health treatment at FHR was so "similar" to what was seen by the non-examining psychologists that it is "not supportive of greater functional limitations." Tr. 31. As a result of this approach, the ALJ essentially ignored FHR's clinical observations of hyperactivity and restlessness and rejected the opinions in the report of Dr. Turchetta, the mental health expert who (unlike the non-examining psychologists) had contact with Plaintiff, observed his ability to understand and sustain concentration/attention and found moderate impairment. Tr. 32. And in light of his reliance on the non-examining psychologists, the ALJ rejected as unpersuasive the opinion of the mental health professional who had actual contact with Plaintiff – Ms. Hilton. Tr. 33.

The Court finds that this case is controlled by the well-settled principle that remand for further proceedings is required if the ALJ's decision is based on the administrative medical/psychological findings of "state-agency [experts who] were not privy to parts of [plaintiff's] . . . record [which] detracts from the weight that can be afforded their opinions." Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5 (D.R.I. May 4, 2020) (second and third alterations in original), adopted by text order (D.R.I. June 5, 2020). When sources opine based on review of a materially incomplete record, it is error for the ALJ to rely on them.

---

[9] The ALJ also did not adopt limitations based on the opinions from the other providers who actually examined Plaintiff – these are the unknown signer of the opinion from Dr. Brennan's practice and the report of Dr. Dionisopoulis. Tr. 34.

13

Ogannes B. v. Kijakazi, C.A. No. 22-325WES, 2023 WL 5561108, at *11 (D.R.I. Aug. 29, 2023), adopted by text order (D.R.I. Sept. 13, 2023). Put differently, such findings are not substantial evidence. Tegan S. v. Saul, 546 F. Supp. 3d 162, 171-72 (D.R.I. 2021) (prior administrative medical findings do not amount to substantial evidence because non-examining experts lacked access to material records).

In this case, the expert physicians were not privy to medical evidence that plainly detracts from the weight that can be afforded to their concededly flawed[10] opinions. See Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018). For example, they were completely unaware of Dr. Brennan's diagnosis of disc issues with radiculopathy and treatment related to lumbar spine pain, including epidural injections; of the diagnosis of bone spurs affecting both feet with possible need for treatment by injection; of the significant findings affecting the right shoulder and arm with treatment by injection; of the confirmation of ongoing hand pain through the diagnosis of carpal tunnel syndrome, treated by injection; and of knee pain treated by injections. See id. at *3 (remand required because records reflecting treatment by injection was missing from file delivered to testifying medical expert). Further, their findings appear to be largely based on the normal x-rays done by SSA in August 2020, which are directly contradicted by the subsequent diagnostic testing that the non-examining physicians did not see. E.g., compare Tr. 106 (November 2020 DDE noting August 2020 x-rays, including "bilateral feet," "were all normal"), with Tr. 817 (x-rays reviewed by treating provider in June 2021 reflects bone spur and osteoarthritis). With a job base already severely eroded because of Plaintiff's limits on left-side reaching and handling, which the ALJ accepted, the Court finds that remand is required for consideration of these significant medical

---

[10] That is, the ALJ himself found them to be unpersuasive as applied to the period following the motor vehicle accident until July 15, 2020. Tr. 25.

14

records that the non-examining physicians did not see and reconsideration of the opinion evidence that the ALJ rejected in reliance on the non-examining physicians. See Virgen C., 2018 WL 4693954, at *2-3.

The ALJ's reliance on the non-examining psychologists is tainted by error for the same reason. They expressly relied on Plaintiff's lack of specialized treatment. Tr. 111 ("There continue to not be any psych TS records"). Their finding that Plaintiff has no sustained understanding or concentration/persistence limitations is unquestionably rendered "less persuasive," Tegan S., 546 F. Supp. 3d at 169, by the reality that Plaintiff began specialized mental health treatment after they completed their review, as well as by the records they did not see, which reflect not only the ongoing diagnosis and treatment of ADHD, PTSD, depression and anxiety, but also include repeated clinical observations of "fidgety," "hyperactive," "restless," "unfocused," and "can't sit still." Tr. 924-58. Collectively, this evidence plainly "detracts from the weight that can be afforded to their findings"; therefore, their findings do not amount to substantial evidence. Virgen C., 2018 WL 4693954, at *3. Therefore, also erroneous is the ALJ's reliance on these non-examining findings to reject Ms. Hilton's opinion, which appears to be consistent with the FHR notes. Accordingly, Court finds that remand is required for consideration of these significant mental health records that the non-examining psychologists did not see and for reconsideration of the Hilton opinion that the ALJ rejected in reliance on the non-examining psychologists.

### V.    **Conclusion**

Based on the foregoing analysis, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) is GRANTED and Defendant's Motion to Affirm the

Commissioner's Decision (ECF No. 17) is DENIED.[11]  This matter is remanded for further administrative proceedings consistent with this decision.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 8, 2024

---

[11] Plaintiff's First Motion to Reverse the Decision of the Commissioner, ECF No. 13, apparently filed without the supporting memorandum, is denied as moot.